Shaun Setareh (SBN 204514)
calendar@setarehlaw.com, shaun@setarehlaw.com
Thomas Segal (SBN 222791)
thomas@setarehlaw.com
Farrah Grant (SBN 293898)
farrah@setarehlaw.com
SETAREH LAW GROUP
420 N. Camden Drive, Suite 100
Beverly Hills, California 90210
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff ROGELIO VARGAS-LOPEZ JR.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNLIMITED JURISDICTION

ROGELIO VARGAS-LOPEZ JR., on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

JPMORGAN CHASE BANK, N.A., an Ohio Corporation; TONNIKA THOMPSON, and individual; TERRY MARTINEZ; an individual; and DOES 1 through 50, inclusive,

*Defendants*.

Case No. 2:26-cv-02099-JWH-JDEx

**<u>FIRST AMENDED CLASS AND REPRESENTATIVE ACTION</u>**

**COMPLAINT**

1. Sexual Harassment in Violation of Gov. Code § 12940 *et seq.*;
2. Quid Pro Quo Sexual Harassment in Violation of Gov. Code § 12940 *et seq.*;
3. Racial Harassment in Violation of Gov. Code § 12940 *et seq.*;
4. Race Discrimination in Violation of Gov. Code § 12940 *et seq.*;
5. Disability Discrimination in Violation of Gov. Code § 12940 *et seq.*;
6. Failure to Accommodate Disability in Violation of Gov. Code § 12940(m);
7. Retaliation in Violation of Gov. Code § 12940(h);
8. Failure to Prevent Discrimination and Harassment in Violation of Gov. Code § 12940(k);
9. Failure to Provide Meal Periods (Lab. Code

§§ 204, 223, 226.7, 512 and 1198);
10. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198);
11. Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1997.1 and 1198);
12. Failure to Provide Accurate Written Wage Statements (Lab. Code §§ 226(a));
13. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203);
14. Failure to Indemnify (Lab. Code § 2802);
15. Failure to Pay Employees For All Hours Worked (29 U.S.C. §§ 201 *et seq.*);
16. Retaliation in Violation of Labor Code § 1102.5;
17. Wrongful Termination in Violation of Public Policy;
18. Intentional Infliction of Emotional Distress;
19. Negligent Infliction of Emotional Distress;
20. Intentional Interference with Prospective Economic Advantage;
21. Defamation;
22. Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*);
23. Civil Penalties (Lab. Code § 2698, *et seq.*)

**JURY TRIAL DEMANDED**

Plaintiff ROGELIO VARGAS-LOPEZ JR. ("Plaintiff"), on behalf of himself, and all others similarly situated, complains and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this representative action against defendant JPMORGAN CHASE BANK, N.A., an Ohio Corporation ("The Company"); TONNIKA THOMPSON, an individual; TERRY MARTINEZ; an individual; and DOES 1 through 50, inclusive, (collectively "Defendants") for alleged violations of Cal. Gov. Code § 12940 *et seq*., common law, the Business and Professions Code § 17200, and the Labor Code. As set forth below, Plaintiff alleges that Defendants have:

(1) sexually harassed Plaintiff and all other similarly situated individuals;

(2) racially harassed Plaintiff;

(3) racially discriminated against Plaintiff;

(4) retaliated against Plaintiff for opposing Defendants' violations of § 12940;

(5) failed to prevent discrimination and harassment;

(6) retaliated against Plaintiff for opposing Defendants' violations of § 1102.5;

(7) wrongfully terminated Plaintiff in violation of public policy;

(8) intentionally inflicted emotional distress on Plaintiff;

(9) negligently inflicted emotional distress on Plaintiff;

(10) intentionally interfered in Plaintiff's potential economic advantage;

(11) defamed Plaintiff;

(12) failed to provide Plaintiff with meal periods;

(13) failed to provide them with rest periods;

(14) failed to pay them premium wages for missed meal and/or rest periods;

(15) failed to provide them with accurate written wage statements;

(16) failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

(17) failed to pay them overtime wages at the correct rate;

(18) failed to pay them overtime and/or double time wages by failing to include all applicable remuneration in calculating the regular rate of pay;

(19) failed to reimburse them for all necessary business expenses;

(20) engaged in unfair business practices; and

(21) failed to pay them all of their final wages following separation of employment.

Based on these alleged violations, Plaintiff now brings this representative action to recover unpaid wages, restitution, civil and statutory penalties, and related relief on behalf of himself and all others similarly situated, all other current and former non-exempt employees in California (the "aggrieved employees"), and the State of California.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1331 because these claims seek redress for violation of Plaintiff's and the putative class' federal statutory rights under the Fair Labor Standard Act (28 U.S.C. sections 201 et seq.).

3. This Court has supplemental jurisdiction over Plaintiff's and the putative class' state law claims pursuant to 28 U.S.C. section 1367(a) because these claims are so closely related to Plaintiff's and the putative class' federal wage and hour claims that they form parts of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District under 28 U.S.C. section 1391(b)(2) and (c) because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred in this District.

5. This Court has personal jurisdiction over this matter because Defendants conduct substantial business activity in this District, and because many of the unlawful acts described in this complaint occurred in this District and gave rise to the claims alleged.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Prior to the initiation of this lawsuit, Plaintiff filed a complaint against each named defendant with the California Civil Rights Department (CRD) pursuant to California Government Code section 12900, *et seq.*, alleging the claims described in this complaint. On December 18, 2025, the CRD issued a "right to sue" letter. A true and correct copy of the administrative complaint and the "right to sue" letter is attached as Exhibit A. All conditions precedent to the institution of this lawsuit have been fulfilled. This action is filed within one year of the date that the CRD issued its right to sue letter.

## PARTIES

7. Plaintiff is and was, and at all relevant times mentioned herein, an individual residing in the State of California.

8. Plaintiff is informed and believes, and thereupon alleges, that Defendant JPMORGAN CHASE BANK, N.A., is, at all relevant times mentioned herein, an Ohio Corporation doing business in the State of California.

9. Plaintiff is informed and believes, and thereupon alleges, that Defendant TONNIKA THOMPSON is and at all relevant times mentioned herein remains, an individual residing in the State of California.

10. Plaintiff is informed and believes, and thereupon alleges, that Defendant TERRY MARTINEZ is and at all relevant times mentioned herein remains, an individual residing in the State of California.

11. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants when ascertained. Plaintiff is informed and believes, and thereupon alleges, that each of the

fictitiously named defendants are responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiff's alleged damages were proximately caused by these defendants, and each of them. Plaintiff will amend this complaint to allege both the true names and capacities of the DOE defendants when ascertained.

12. Plaintiff is informed and believes, and thereupon alleges that, at all relevant times mentioned herein, some or all of the defendants were the representatives, agents, employees, partners, directors, associates, joint venturers, joint employers, principals, or co-participants of some or all of the other defendants, and, in doing the things alleged herein, were acting within the course and scope of such relationship and with the full knowledge, consent, and ratification by such other defendants.

## CLASS ALLEGATIONS

13. This action has been brought and may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23, because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

14. **Relevant Time Period**: The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is entered.

> **Hourly Employee Class**: All persons employed by Defendants whether directly or indirectly through any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**.
>
> > **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours during the **Relevant Time Period**.
> >
> > **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours during the **Relevant Time Period**.
> >
> > **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class** members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered.
> >
> > **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendants during the period

beginning three years before the filing of this action and ending when final judgment is entered.

**UCL Class**: All **Hourly Employee Class** members employed by Defendants in California during the **Relevant Time Period**.

**Expense Reimbursement Class:** All persons employed by Defendants in California who incurred business expenses during the **Relevant Time Period**.

15. **Reservation of Rights**: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff reserves the right to amend or modify the class definitions with greater specificity by further division into sub-classes and/or by limitation to particular issues.

## FACTUAL BACKGROUND

16. Plaintiff was employed by The Company in an hourly, non-exempt position as a Private Claim Banker at The Company's banking center located in Long Beach, California from approximately April 5, 2016 through March 7, 2025.

17. Plaintiff was a hardworking and steadfast employee, who excelled in performing his job duties within the Defendants' rules, requirements, and policies. Plaintiff was a top performer, who was praised in his final annual review in December 2024 and rewarded for this performance with a pay raise in February 2025.

### Sexual Harassment

18. During Plaintiff's interview process, Affiliate Manager Tonnika Thompson, who would later become Branch Manager, and Manager Terry Martinez made sexually explicit comments towards him. For example, at the beginning of his interview, Martinez remarked to him "Why aren't you wearing a tie? That's like me showing up to church wearing a thong." Plaintiff was thrown off by this comment while Thompson and Martinez laughed between themselves. Fearing that any reply could impact his candidacy, Plaintiff said nothing while his interviewers continued to laugh and act amused.

19. This pattern of inappropriate and sexually explicit conversation continued throughout

his employment.

20. In one instance, Thompson spoke at length about her sex toy during a group conversation among employees. While Plaintiff and other employees were leaving work for the day, Thompson stated, loud enough for all the departing employees to hear, that it was "time to go relax" and made reference to using a vibrator. Other employees appeared surprised by her outburst and replied "Oh, Tonnika!" Plaintiff felt extremely uncomfortable and remained quiet.

21. Thompson engaged in sexualized conduct at work that made Plaintiff and other co-workers uncomfortable. Sometimes Thompson unbuttoned the top 3–4 buttons of her shirt to reveal significant cleavage. On several occasions (approximately once every other month) Thompson twerked at work, performing sexually provocative pelvic and lower-body gyrations. Thompson looked Plaintiff in the eye while twerking, trying to provoke a response from Plaintiff. Additionally, Thompson stared at Plaintiff's pelvic area while he was working in the mornings on a daily basis. Plaintiff is aware that Thompson stared at other male employee's pelvic areas as well during working hours, making them uncomfortable.

22. Thompson assigned Plaintiff heavy lifting tasks because he was a man. For example, when food or heavy paper documents were ordered for the branch, Thompson would single Plaintiff out to carry items or perform heavy lifting. This occurred repeatedly throughout the course of his employment.

**Disability Discrimination**

23. Plaintiff experienced work-related stress and panic attacks caused by workplace stress and sexual harassment. Plaintiff did not have panic attacks before working for Defendants.

24. Due to the sexual harassment and discrimination at work, Plaintiff needed to take a medical leave of absence in or around 2021 for several months.

25. When Plaintiff retuned from the medial leave of absence, the sexual harassment and

discrimination at work continued. Beginning on or around December 2024, Plaintiff needed to take a second intermittent medical leave due to the sexual harassment, discrimination and work stress.

26. Thompson expressed frustration about Plaintiff's intermittent medical leave and questioned whether Plaintiff actually had panic attacks or was "faking it," including in late 2024.

27. Thompson treated Plaintiff differently after his panic attacks and medical leave. For example, Thompson gave more responsibilities to other individuals who had less seniority.

28. Thompson hesitated to promote Plaintiff to the position of private client banker because he occasionally had to use intermit medical leave due to his disability. Plaintiff had to negotiate with the district manager (above Thompson) to obtain the deserved promotion.

**Racial Discrimination**

29. Manager Thompson, knowing that Plaintiff is of Mexican descent, repeatedly referred to other Hispanic employees as "your people" when speaking to Plaintiff, made jokes about Plaintiff traveling to Tijuana to "cross people over the border," and generally subjected Plaintiff to regular racist and derogatory commentary about his Hispanic ethnicity while employed at The Company.

30. Thompson made statements such as: "Sometimes I don't have the patience to help your people," and "You help your people, I'll take care of my people."

**Clock In Process**

31. Plaintiff and the putative class were trained to clock in for each work shift using the desktop computer assigned to them. Plaintiff and the putative class were required to first turn on their computer and wait for it to load. When Plaintiff arrived to work, he walked directly to his desk, signed in with his username and password, and waited for his sign in to be complete. He would then ordinarily open the program used to clock in and out, wait for the program to load, then

fill out his time sheet. It generally took approximately one to two minutes for the computer to boot up before he was able to clock in.

32. Due to frequent technical difficulties in the functioning of the desktop station assigned to him, sometimes Plaintiff would abandon signing in on his assigned desktop and go to another open desktop to complete the clock in process.

33. Accordingly, by the time Plaintiff and the putative class were able to clock in, one to two minutes or more may have already passed. This time was not properly recorded as time worked and resulted in Plaintiff and the putative class not being paid for all hours worked by Defendants.

34. Defendants' process for clocking in and out required Plaintiff and the putative class to manually input their time, which led to inaccurately reported clock-in and clock-out times which Defendants further exploited by directing Plaintiff to enter false clock-in, clock-out, and meal break times.

**Clocking Out**

35. Plaintiff and the putative class would be required to perform off-the-clock work almost daily after they had clocked out for their shift. For example, Plaintiff and the putative class would regularly be assigned tasks by a manager or be asked questions by a manager after they had already clocked out for their shift.

36. Defendants knew or should have known that Plaintiff and the putative class were not "on the clock" after they had clocked out and therefore should not have directed Plaintiff and the putative class to perform any additional work once they had clocked out.

37. After Plaintiff and the putative class clocked out, they had to wait an additional ten to fifteen minutes each day to be released by a manager or other employee who could lock the door behind him.

38. The time spent by Plaintiff and the putative class to wait for the manager to perform

his or her closing duties before they were permitted to leave the store could be anywhere from five to ten minutes—time which was unpaid by Defendants.

**Off-the-Clock Work**

39. Plaintiff and the putative class were not paid all wages earned as Defendants directed, permitted, or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

40. Plaintiff and the putative class regularly performed work after their scheduled work hours and were not paid for this time. Plaintiff and the putative class were instructed to perform duties such as checking that the vault was closed, clean restrooms, clean breakrooms, and answer work-related questions after they had already clocked out and were not paid for the time spent performing these additional duties.

41. As a result of performing off-the-clock work that was directed, permitted, or otherwise encouraged by Defendants, Plaintiff and the putative class should have been paid for this time. Instead, Defendants only paid Plaintiff and the putative class based on the time they were clocked in for their shifts and did not pay Plaintiff and the putative class for any of the time spent working off-the-clock.

42. Defendants knew or should have known that Plaintiff and the putative class were performing work before and after their scheduled work shifts and failed to pay Plaintiff and the putative class for these hours.

43. Defendants were aware of this practice and directed, permitted, or otherwise encouraged Plaintiff and the putative class to perform off-the-clock work.

44. As a result of Defendants' policies and practices, Plaintiff and the putative class were not paid for all hours worked.

**Missed Meal Periods**

45. During their employment with Defendants, Plaintiff and the putative class regularly worked shifts of eight to ten hours per day, without being afforded a meal break during the first five hours, and/or a second meal break after ten hours, as required by California law.

46. Plaintiffs and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' failure to accurately record the starting and stopping times of all work periods; (2) Defendants' policy of requiring Plaintiff and the putative class to clock out for their meal periods although they continued to work off-the-clock; (3) Defendants' policy of directing Plaintiff to falsely record that he took his lunch break; and (4) Defendants' practice of scheduling meal breaks as "appointments" that would be partially or completely overridden by client appointments or other scheduled work duties.

47. Plaintiff's manager often directed Plaintiff to falsely record that he took his lunch break before his fifth hour of work, when in fact he had taken no lunch at all or had taken lunch later. When Plaintiff missed his lunch break, this manager also directed him to leave at 5:00 instead of 5:30 and then falsely input that he took a thirty-minute lunch earlier in the day, during his first five hours of work.

48. As a result of Defendants' practices, Plaintiff and the putative class received no meal break at all one to two times a week. Plaintiff and the putative class's meal breaks were shortened or interrupted on the days when they did receive meal breaks.

49. Plaintiff and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to Plaintiff routinely performing off-the-clock work that Defendants either knew or should have known they were performing.

**Missed Rest Periods**

50. Plaintiff and the putative class were not provided with rest periods of at least ten

(10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of requiring Plaintiff and the putative class to take their rest periods only during scheduled times although they continued to work during those periods; (2) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their full breaks in order to complete their work; (3) Defendants' policy of overlapping scheduled rest periods with on-the-clock work; and (4) no formal written meal and rest period policy that encouraged employees to take their meal and rest periods.

51. As a result of Defendants' policy, Plaintiff and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendants' scheduling that required Plaintiff and the putative class to work through their rest periods in order to complete their assignments on time.

**Regular Rate of Pay**

52. The regular rate of pay under California law includes all remuneration for employment paid, on behalf of the employer, to the employee. This requirement includes, but is not limited to, commissions and non-discretionary bonuses.

53. During the applicable limitations period, Defendants violated the rights of Plaintiff and the putative class under the above-referenced Labor Code sections by failing to pay them overtime wages for all overtime hours worked in violation of Labor Code §§ 510, 1194, and 1198 as a result of not correctly calculating their regular rate of pay to include all applicable remuneration, including, but not limited to, non-discretionary bonuses and/or shift-differential pay.

**Expense Reimbursement**

54. Plaintiff and the putative class members were required to utilize their own personal cell phones to perform their daily job duties.

55. Plaintiff and the putative class members were given an annual allowance of $180.00

to purchase dress shirts, but were not reimbursed for additional dress shirts, clothes and shoes that were required to meet Defendants' professional dress code.

56. Plaintiff and the putative class members were not reimbursed for business expenses including, but not limited to, use of their personal cell phones and gas and mileage to reach their job site and training site.

57. Defendants failed to reimburse Plaintiff and the putative class for such necessary business expenses incurred by them.

**Wage Statements**

58. Plaintiff and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code § 226.

59. During his employment with The Company, Plaintiff received paychecks in addition to his regular paychecks, which Plaintiff believes were attempts to account for errors in his compensation.

60. Defendants failed to comply with Labor Code 0167 226(a)(1) as "gross wages earned" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

61. Defendants failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

62. Defendants failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

63. Defendants failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each

hourly rate by the employee" were not accurately reflected in that all hours worked, including overtime and "off-the-clock" work were not included.

**Retaliation**

64. Plaintiff first raised concerns to Human Resources ("HR") about missed and interrupted meal breaks and rest periods in February 2025 via a company app. In these messages, Plaintiff explained that his meal breaks and rest periods were constantly interrupted and inquired if this entitled him to additional compensation. HR gave him no response.

65. On or around March 3, 2025, Plaintiff sent a text message to Branch Manager Thompson informing her that he would not be able to make it into work due to not feeling well. She replied "ok."

66. Thompson ultimately chose to terminate Plaintiff. On or around March 7, 2025, Plaintiff was pulled into Thompson's office and terminated on the false grounds that he manipulated the customers incentive program.

67. Shortly before Plaintiff's termination, The Company integrated a new incentive program in which employees could receive incentive pay for signing new clients. Upper management was aware that this system was fraught with errors that would lead incentive bonuses to automatically activate and improperly count towards the compensation of Plaintiff and other employees of The Company. Upper management instructed employees to report these errors as they occurred.

68. In late February or early March 2025, Plaintiff verbally notified Thompson that an incentive bonus was improperly credited to him. Thompson instructed Plaintiff to make a note of the error on the client profile, and the topic was not brought to his attention again until his termination meeting.

69. Following his termination, Plaintiff notified HR that he believed the termination to be in retaliation for raising his concerns regarding missed and interrupted meal and rest periods, and to also be motivated by Thompson's racial animus towards him.

70. After the meeting in which he was terminated, Thompson escorted Plaintiff out of the building, refused to provide him with a letter of termination, and did not provide him with his final paycheck immediately upon termination.

71. Plaintiff received his final paycheck on or around March 21, 2025, and continued to receive additional paychecks between March and May 2025.

72. Plaintiff since filed a request for reconsideration regarding his termination with HR.

73. Following his termination, The Company reported Plaintiff on BrokerCheck, a tool of the Financial Industry Regulatory Authority ("FINRA") accessible to potential employers of Plaintiff. FINRA Form U5 is completed by employers to serve as an official record of termination for registered securities professionals.

74. Plaintiff has successfully obtained professional licenses including Series 6, Series 63, Securities Industry Essentials, and Life and Health Insurance.

75. Following his termination from The Company, Plaintiff worked with a recruiter to find a new position. Plaintiff received a contingent job offer as a Licensed Banker with Wells Fargo. However, Wells Fargo subsequently retracted the offer, informing him that they could only offer him the lower position of Associate Personal Banker, the role in which he is now employed. Following this withdrawal, the recruiter informed Plaintiff via email that Wells Fargo retracted the initial offer due to the description of Plaintiff's termination The Company used on Plaintiff's U5 Form.

76. As a result, Plaintiff's employment prospects have been severely limited and he was forced to accept the Associate Personal Banker position that does not require his professional licenses.

**FIRST CAUSE OF ACTION**

**SEXUAL HARRASSMENT IN VIOLATION OF GOV. CODE § 12940 *ET SEQ.***

**(Against all Defendants)**

77. Plaintiffs re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

78. At all times mentioned herein, the Fair Employment and Housing Act ("FEHA"), Government Code section 12940 et seq., was in full force and effect and binding on Defendants.

79. Plaintiff is a member of the class protected by FEHA's prohibitions against discrimination and harassment because FEHA protects employees from sex-based harassment, including sexual harassment.

80. At all relevant times, The Company was an employer within the meaning of Section 12940(j) because they employed one or more persons.

81. At all relevant times, The Company was Plaintiff's employer within the meaning of FEHA, and Defendants Tonnika Thompson and Terry Martinez were supervisors and/or agents of the Company acting within the course and scope of their agency.

82. At all times herein mentioned, FEHA as promulgated in Government Code section 12940 *et seq*. was in full force and effect and binding on Defendants. Section 12940(j) provides, in relevant part, that it is an unlawful employment practice:

> (j)(1) For an employer . . . or any other person, because of . . . sex . . .to harass an employee. . . . Harassment of an employee . . . by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. . . .An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. . . . [¶] (3) An employee of an entity

> subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action. [¶] (4)(A) For purposes of this subdivision only, "employer" means any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities. The definition of "employer" in subdivision (d) of Section 12926 applies to all provisions of this section other than this subdivision. . . . [¶] (C) For purposes of this subdivision, "harassment" because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire.

83. The Company violated this section by sexually harassing Plaintiff. Defendants Thompson and Martinez as individual employees violated this section by sexually harassing Plaintiff through behavior including but not limited to repeated explicit sexual remarks directed towards him and spoken in his vicinity.

84. The Company violated section 12940(j) because it knew or should have known of the inappropriate sexual comments made in the vicinity of Plaintiff and the putative class.

85. Defendants Thompson ands Martinez are personally liable for their sexual harassment of Plaintiff and the putative class.

86. As Defendants Thompson and Martinez were employed in supervisory roles, their knowledge of their own sexual harassment of Plaintiff is imputed to The Company and is sufficient to establish unlawful harassment.

87. The actions of Defendants, as described in this Complaint, constitute unlawful sexual harassment against Plaintiff.

88. The harassment by Defendants created a hostile, intimidating, and oppressive work environment for Plaintiff, whereby the conditions of their employment were adversely affected. Moreover, the harassment impeded Plaintiffs' work and the enjoyment of their employment for Defendants.

89. Defendants' harassment and discrimination described in this Complaint violates the FEHA and other state and federal statutes that prohibit harassment and discrimination in employment, including the California Constitution and Civil Rights Act, as amended.

90. As a direct and proximate result of Defendants' harassment and discrimination, Plaintiffs have suffered and will continue to suffer damages in an amount within the jurisdiction of this Court, the exact amount to be proven at trial. Such damages include loss of salary and other valuable employment benefits, prejudgment interest and interest on the sum of damages at the legal rate, and other consequential damages, including damages for shame, humiliation, mental anguish, and emotional distress caused by the conduct of Defendants and each of them.

91. In addition, pursuant to Government Code section 12965(b), Plaintiff is entitled to his attorneys' fees in prosecuting this lawsuit.

92. Because the wrongful acts against Plaintiff were carried out, authorized, and ratified by Defendants' directors, officer and/or managing agents, acting with malice, oppression or fraud, or were deliberate, willful, and in conscious disregard of the probability of causing injury to Plaintiff, as reflected by the actions as described earlier in this Complaint, Plaintiff seeks punitive damages against Defendants, and each of them, in order to deter them from such and similar conduct in the future.

## SECOND CAUSE OF ACTION

## QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF GOV. CODE § 12940 *ET SEQ.*

**(Against all Defendants)**

88. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89. Quid pro quo sexual harassment, prohibited under § 12940(j)(1), occurs when submission to or rejection of unwelcome sexual conduct by a supervisor is used as the basis for employment decisions affecting the employee, or when tangible job benefits are conditioned upon acquiescence to sexual demands.

90. Plaintiff alleges that supervisors engaged in unwelcome sexual conduct toward him, including sexually explicit remarks and discussions in the workplace.

91. The foregoing sexual conduct was linked to tangible employment actions and conditions of employment, including hiring, continued employment, terms and conditions of employment, and/or advancement opportunities, such that submission to or rejection of the conduct was made an express or implied condition of job benefits or used as a basis for employment decisions affecting Plaintiff.

92. The knowledge and conduct of supervisors Thompson and Martinez are imputable to the Company under FEHA, including because they acted in supervisory capacities and within the scope of their agency.

93. Despite actual and/or constructive knowledge of the unwelcome sexual conduct, the Company failed to take immediate and appropriate corrective action and failed to take all reasonable steps to prevent harassment.

94. To the extent Thompson and Martinez engaged in sexual harassment, they are personally liable under FEHA.

95. As a direct and proximate result of Defendants' quid pro quo sexual harassment, Plaintiff suffered harm, including emotional distress, humiliation, and damage to his employment rights, and has sustained economic and non-economic losses in amounts to be proven at trial.

96. Plaintiff seeks all remedies available under FEHA, including but not limited to compensatory damages, general and special damages, punitive damages as permitted by law,

declaratory and injunctive relief as permitted by law, prejudgment interest, costs of suit, and reasonable attorneys' fees pursuant to Government Code section 12965(b).

**THIRD CAUSE OF ACTION**

**RACIAL HARASSMENT IN VIOLATION OF GOV. CODE CODE § 12940 *ET SEQ***

**(Against all Defendants)**

97. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

98. At all times herein mentioned, FEHA, Government Code section 12940(j)(1), was in full force and effect and binding on Defendants. § 12940(j)(1) makes it an unlawful employment practice:

> For an employer . . . or any other person, because of race . . . to harass an employee. . . . Harassment of an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action…An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. . . . [¶] (3) An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

99. The Company discriminated against Plaintiff by subjecting him to adverse employment actions, including his termination, on account of his race, as alleged above and herein.

100. The Company violated section 12940(j) because it knew or should have known of the inappropriate racial comments made in the vicinity of Plaintiff and the putative class.

101. Defendants Thompson and Martinez are personally liable for their racial harassment of Plaintiff and the putative class.

102. As Defendants Thompson and Martinez were employed in supervisory roles, their knowledge of their own racial harassment of Plaintiff is imputed to The Company and is sufficient

to establish unlawful harassment.

103. The actions of Defendants, as described in this Complaint, constitute unlawful racial harassment against Plaintiff.

104. As a direct and proximate cause of The Company's violation of the FEHA, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

105. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety, all of which is substantial and enduring. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

106. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## FOURTH CAUSE OF ACTION

## RACIAL DISCRIMINATION IN VIOLATION OF GOV. CODE § 12940 *ET SEQ*

## (Against all Defendants)

107. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940(a), was in full force and effect and binding on Defendants. Under § 12940(a), an employer may not discriminate against an employee on the basis of his race. § 12940(a) makes it an unlawful

employment practice:

> For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decision making, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

109. Defendants discriminated against Plaintiff by subjecting him to adverse employment actions, including his termination, on account of his race, as alleged above and herein.

110. As a direct and proximate cause of Defendants violation of the FEHA, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

111. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety, all of which is substantial and enduring. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

112. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**FIFTH CAUSE OF ACTION**

**DISABILITY DISCRIMINATION IN VIOLATION OF GOV. CODE § 12940 *ET SEQ.***

**(Against All Defendants)**

113. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

114. At all times herein mentioned the FEHA, California Government Code section 12940, was in full force and effect. Under the FEHA, "It shall be an unlawful employment practice . . . [¶] (a) For an employer, because of . . . physical disability . . . [or] medical condition, . . . to discharge the person from employment or . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Defendants violated this section by terminating Plaintiff because of his disability.

115. The Company was an employer within the meaning of the FEHA because they employed five or more persons.

116. Plaintiff was disabled for the purposes of the FEHA. Plaintiff suffered from anxiety and panic attacks, as a result of the harassment and discrimination he experienced while working for Defendants. This injury and medical condition limited his ability to perform a major life activity, namely, his job. Moreover, Plaintiff had a record or history of his disability that was known to Defendants, thus independently constituting a disability under Cal. Gov. Code section 12926(k)(3). Furthermore, Defendants treated Plaintiff as though he had, or had had in the past, a condition making the achievement of a major life activity difficult; or it believed that, although his impairment might have had no disabling effect at the end of the leave period, or by some reasonable accommodation, that impairment might again worsen into a disability. *See* Government Code section 12926(k)(4), (5).

117. Plaintiff was subjected to adverse employment actions because of his disability. Thompson hesitated to promote Plaintiff to the position of private client banker because he occasionally had to use intermit medical leave due to his disability. Plaintiff had to negotiate with the district manager (above Thompson) to obtain the deserved promotion. Plaintiff was fired in part on the basis of his need for interment medical leave. Defendants failed to accommodate Plaintiff's disability and unlawfully terminated him.

118. As a direct and proximate cause of Defendants' violation of the FEHA, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

119. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff

has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety, all of which is substantial and enduring. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

120. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendant, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION

## FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF GOV. CODE § 12940(m)

## (Against All Defendants)

121. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

122. California Government Code section 12940(m) prohibits an employer from failing to make reasonable accommodations for known disabilities of employees. Defendants violated this section by failing to accommodate Plaintiff's known disabilities.

123. Plaintiff was disabled within the meaning of the FEHA, and Defendants knew of his disability.

124. Plaintiff was able to perform his essential job duties with reasonable accommodation.

125. Defendants did not make reasonable accommodations to Plaintiff, despite their ability to do so without suffering undue hardship; instead, Defendants terminated Plaintiff after his request for the accommodation of intermittent medical leave.

126. Plaintiff believes, and on that basis alleges, that his disability was a motivating factor in Defendants terminating his employment.

127. As a direct and proximate cause of Defendants' violation of California Government Code section 12940(m), Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

128. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety, all of which is substantial and enduring. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

129. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**SEVENTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF GOV. CODE §12940(h)**

**(Against all Defendants)**

130. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

131. At all times herein mentioned, FEHA, Government Code section 12940(h), was in full force and effect and binding on Defendants. These statutes require Defendants to refrain from retaliating against Plaintiff.

132. Defendants' adverse actions against Plaintiff as described in this Complaint, including but not limited to their negative assessment of Plaintiff on FINRA Form U5, constitute unlawful discrimination and retaliation against Plaintiff for reporting his claims of harassment and discrimination to Defendants.

133. As a direct and proximate cause of Defendants' violation of California Government

Code section 12940(h), Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

134. As a further direct and legal result of the acts and conduct of Defendants, Plaintiff has been caused to, and did, suffer and continues to suffer severe emotional and mental distress and anguish, humiliation, embarrassment, anger, shock, pain, discomfort, and anxiety. The exact nature and extent of these injuries is presently unknown to Plaintiff, who will pray leave of court to assert the same when they are ascertained.

**135.** The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**EIGHTH CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT**

**IN VIOLATION OF GOV. CODE § 12940(k)**

**(Against all Defendants)**

136. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

137. At all times mentioned herein, FEHA, California Government Code section 12940 *et seq.* was in full force and effect and binding on Defendants. These sections require Defendants to take reasonable steps to prevent discrimination from occurring.

138. As alleged herein, Plaintiff suffered unlawful discrimination and harassment at the hands of Defendants.

139. Defendants, and each of them, failed to take all reasonable steps to prevent such

harassment and discrimination in violation of Government Code section 12940(k).

140. Defendants failed to take appropriate and reasonable steps to train or monitor its employees, supervisors and or managers regarding sex and race harassment and race discrimination by failing to enforce a policy against unlawful discrimination, and by failing to take prompt and appropriate disciplinary action against the perpetrators of discrimination.

141. As a direct and proximate result of Defendants' failure to take all reasonable steps to prevent harassment and discrimination, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this Court, the exact amount to be proven at trial. Such damages include loss of salary and other valuable employment benefits, prejudgment interest and interest on the sum of damages at the legal rate, and other consequential damages, including damages for shame, humiliation, mental anguish, and emotional distress caused by the conduct of Defendants and each of them.

142. In addition, pursuant to Government Code section 12965(b), Plaintiff is entitled to his attorneys' fees in prosecuting this lawsuit.

143. Because the wrongful acts against Plaintiff were carried out, authorized, or ratified by Defendants' directors, officers and/or managing agents, acting with malice, oppression or fraud, or were deliberate, willful, and in conscious disregard of the probability of causing injury to Plaintiff, as reflected by the actions as described earlier in this Complaint, Plaintiff seeks punitive damages against Defendants, and each of them, in order to deter them from such and similar conduct in the future.

**NINTH CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS**

**(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

**(Plaintiff and Meal Period Sub-Class)**

144. Plaintiff incorporates by reference the preceding paragraphs as if fully alleged herein.

145. At all relevant times, Plaintiff and the **Meal Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order ("Wage Order").

146. Labor Code § 512 and § 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

147. Labor Code § 226.7 and § 11 of the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

148. Compensation for missed meal periods constitutes wages within the meaning of Labor Code § 200.

149. Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the applicable Wage Order.

150. Section 11 of the applicable Wage Order states:

> "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

151. At all relevant times, Plaintiff was not subject to a valid on-duty meal period agreement. Plaintiff is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendants.

152. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing Plaintiff and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code § 512 and the applicable Wage Order.

153. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

154. Moreover, Defendants' written policies do not provide that employees must take their first meal period before the end of the fifth hour of work, that employees are entitled to a second meal period if they work a shift of over ten hours, or that the second meal period must commence before the end of the tenth hour of work, unless waived.

155. At all relevant times, Defendants failed to pay Plaintiff and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

156. Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

157. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

**TENTH CAUSE OF ACTION**

**FAILURE TO PROVIDE REST PERIODS**

**(Lab. Code §§ 204, 223, 226.7 and 1198)**

**(Plaintiff and Rest Period Sub-Class)**

158. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

159. At all relevant times, Plaintiff and the **Rest Period Sub-Class** members have been non-exempt employees of Defendants entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

160. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

161. Labor Code § 226.7 and § 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

162. Compensation for missed rest periods constitutes wages within the meaning of Labor Code § 200.

163. Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

164. Plaintiff alleges that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four-hour work period, or major fraction thereof, as required by the applicable Wage Order.

165. At all relevant times, Defendants failed to pay Plaintiff and the **Rest Period Sub-**

**Class** members additional premium wages when required rest periods were not provided.

166. Specifically, Defendants written policies do not provide that employees may take a rest period for each four hours worked, or major fraction thereof, nor that rest periods should be taken in the middle of each work period insofar as practicable.

167. Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

168. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Rest Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

**ELEVENTH CAUSE OF ACTION**

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiff and Hourly Employee Class)**

169. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

170. At all relevant times, Plaintiff and **Hourly Employee Class** members are or have been non-exempt employees of Defendants entitled to the full protections of the Labor Code and the applicable Wage Order.

171. Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

172. Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consists of all hours that an employer has actual or constructive knowledge that employees are working.

173. Labor Code § 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

174. Labor Code § 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

175. Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

176. Labor Code § 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

177. Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

178. Labor Code § 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

179. Labor Code § 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

180. Labor Code § 510 and § 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times the employees' respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and for the first eight hours worked on the

seventh consecutive day of one workweek.

181. Labor Code § 510 and § 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times the employees' respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

182. Plaintiff is informed and believes that, at all relevant times, Defendants have applied centrally devised policies and practices to him and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

183. Defendants use a time and attendance timekeeping policy and practice which resulted in time during Plaintiff and the aggrieved employees were subject to the control of Defendants but were not paid for all hours actually worked.

184. Plaintiff and the putative class were compensated hourly but Defendants failed to pay them for time spent performing tasks before and after their scheduled shifts.

185. In California, an employer is required to pay an employee for "all hours worked" which includes all time that an employee is under the control of the employer and includes all time that the employee is suffered or permitted to work. This includes the time an employee spends, either directly or indirectly, performing services which inure to the benefit of the employer and any time during which an employer's policies and procedures do not allow employees to use that time effectively for their own purposes. (*Morillion v. Royal Packing Co.* (2002) 22 Cal.4th 575, 586-588; *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968.) In turn, this includes but is not limited to time spent by employees that they cannot effectively use for their own purposes because the employees are compelled by the necessities of the employer's business.

186. The minimum wage statute applicable to Defendants' business currently provides: "Every employer shall pay to each employee, on the established payday for the period involved, not

less than the applicable minimum wage *for all hours worked* in the payroll period, whether the remuneration is measure by time, piece, commission or otherwise." (Italics added.) This language expresses the intent to ensure that employees be compensated at the minimum wage for each hour worked.

187. Labor Code §§ 1194 and 1197 require that an employer compensate employees for "hours worked" at least at a minimum wage rate of pay as established by the wage orders.

188. Despite the fact California law requires employers to pay employees for all hours worked at least at a minimum wage rate, Defendants suffered and permitted Plaintiff and the putative class to perform non-compensable related work for which they received no compensation at all.

189. Defendants failed to pay Plaintiff and the putative class at least the minimum wage for all hours worked, including overtime and/or double time hours when they worked overtime and/or double time.

190. At all relevant times, Defendants failed to pay hourly wages to Plaintiff and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

191. At all relevant times, Defendants failed to pay hourly wages to Plaintiff for all time worked, including but not limited to, overtime wages at statutory and/or agreed rates by suffering or permitting him to work off-the-clock pre-shift, post-shift, and during meal periods.

192. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants maintained a policy or practice of not paying hourly wages to **Hourly Employee Class** members for all time worked, including but not limited to overtime wages, at statutory and/or agreed rates by suffering or permitting them to work off-the-clock pre-shift, post-shift, and during meal periods.

193. Section 9 of the applicable Wage Order states:

> "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term 'uniform' includes wearing apparel and accessories of distinctive design or color."

194. If the employer does not choose to maintain employees' uniforms itself where it is required to do so, the Division of Labor Standards Enforcement ("DLSE") takes the position that the employer may pay each affected employee a weekly maintenance allowance of an hour's pay at the state minimum wage rate in lieu of maintaining the uniforms, assuming that an hour is a realistic estimate of the time involved in maintaining the uniform.

195. At all relevant times during the applicable limitations period, and in violation of the above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate Plaintiff with minimum and/or overtime wages for all hours she worked as a result of its failure to maintain employee uniforms or pay her a weekly maintenance allowance.

196. Plaintiff is informed and believes that, at all relevant times and in violation of the above-referenced sections of the Labor Code and the applicable Wage Order, Defendants failed to compensate **Hourly Employee Class** members with minimum and/or overtime wages for all hours they worked as a result of its failures to maintain employee uniforms or pay them a weekly maintenance allowance.

197. During the relevant time period, Defendants failed to pay Plaintiff and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendants directed, permitted, or otherwise encouraged Plaintiff and **Hourly Employee Class** members to perform off-the-clock work.

198. As a result of Defendants' unlawful conduct, Plaintiff and **Hourly Employee Class** members have suffered damages in an amount subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period,

including overtime wages.

199. Pursuant to Labor Code §§ 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seeks to recover unpaid straight time and overtime wages, interest thereon, and costs of suit.

200. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiff, on behalf of himself and **Hourly Employee Class** members, seeks to recover reasonable attorneys' fees.

## <u>TWELFTH CAUSE OF ACTION</u>

## FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

**(Lab. Code § 226)**

**(Plaintiff and Wage Statement Penalties Sub-Class)**

201. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

202. Labor Code § 226(a) states:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

203. The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006.)

204. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements as described above.

205. Plaintiff is informed and believes that Defendants' failure to provide him and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendants had the ability to provide them with accurate wage statements but had intentionally provided them with written wage statements that Defendants knew do not comply with Labor Code § 226(a).

206. Plaintiff and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendants have violated Plaintiff's and **Wage Statement Penalties Sub-Class** members' legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

207. Pursuant to Labor Code § 226(e), Plaintiff, on behalf of himself and **Wage**

**Statement Penalties Sub-Class** members, seeks the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation of Labor Code section 226(a) occurred and one hundred dollars ($100.00) for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member.

208. Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Wage Statement Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

**<u>THIRTEENTH CAUSE OF ACTION</u>**

**FAILURE TO TIMELY PAY ALL FINAL WAGES**

**(Lab. Code §§ 201–203)**

**(Plaintiff and Waiting Time Penalties Sub-Class)**

209. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

210. At all relevant times, Plaintiff and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendants, to timely payment of all wages earned and unpaid before termination or resignation.

211. At all relevant times, pursuant to Labor Code § 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

212. At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages at the time of resignation.

213. At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving less than seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours' of giving notice of resignation.

214. During the applicable limitations period, Defendants failed to pay Plaintiff all of his final wages in accordance with the Labor Code by failing to timely pay him all of his final wages.

215. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

216. Plaintiff is informed and believes that, at all relevant times during the applicable limitations period, Defendants have maintained a policy or practice of paying **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code §§ 201 or 202 by failing to timely pay them all final wages.

217. Plaintiff is informed and believes and thereupon alleges that Defendants' failure to timely pay all final wages to him and **Waiting Time Penalties Sub-Class** members have been willful in that Defendants have the ability to pay final wages in accordance with Labor Code §§ 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

218. Pursuant to Labor Code §§ 203 and 218.6, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seeks waiting time penalties from the respective dates that their final wages had first become due until paid, up to a maximum of thirty days, and interest thereon.

219. Pursuant to Labor Code § 226, Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff, on behalf of himself and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

## FOURTEENTH CAUSE OF ACTION

## FAILURE TO INDEMNIFY

## (Lab. Code § 2802)

**(Plaintiff and Expense Reimbursement Class)**

220. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

221. Labor Code section 2802(a) states:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

222. At all relevant times during the applicable limitations period, Plaintiff and the **Expense Reimbursement Class** members incurred necessary business-related expenses and costs, including but not limited to, cellphone usages for business purposes.

223. Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify Plaintiff for all necessary expenses incurred in the discharge of their duties.

224. Plaintiff is informed and believes and thereupon alleges that the reimbursement paid by Defendants was insufficient to indemnify **Expense Reimbursement Class** members for all necessary business expenses incurred in the discharge of their duties.

225. Pursuant to Labor Code § 452, an employer is authorized to prescribe the weight, color, quality, texture, style, form, and make of uniforms required to be worn by their employees.

226. Section 9 of the applicable Wage Order states:

> When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer. The term ‘uniform’ includes wearing apparel and accessories of distinctive design or color.

227. At all relevant times during the applicable limitations period, Defendants required Plaintiff and the **Expense Reimbursement Class** members to pay for expenses and/or losses caused by Defendants’ want of ordinary care. Defendants failed to indemnify Plaintiff and **Expense Reimbursement Class** members for all such expenditures.

228. At all relevant times during the applicable limitations period, Defendants required Plaintiff and **Expense Reimbursement Class** members to purchase and maintain uniforms and apparel unique to Defendants at Plaintiff's and **Expense Reimbursement Class** members' expense. Defendants failed to indemnify Plaintiff and **Expense Reimbursement Class** members for all such expenditures.

229. Plaintiff is informed and believes that, during the applicable limitations period, Defendants maintained a policy or practice of not reimbursing Plaintiff and **Expense Reimbursement Class** members for all necessary business expenses.

230. Accordingly, Plaintiff and **Expense Reimbursement Class** members are entitled to restitution for all unpaid amounts due and owing within four years of the date of the filing of the original Complaint and until the date of entry of judgment.

231. Plaintiff, on behalf of himself, and **Expense Reimbursement Class** members, seeks interest thereon and costs pursuant to Labor Code § 218.6 and reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5.

## FIFTEENTH CAUSE OF ACTION

## FAILURE TO PAY EMPLOYEES FOR ALL HOURS WORKED IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

**(29 U.S.C. §§ 201 *et seq.*)**

**(Against all Defendants)**

232. Plaintiff incorporates the preceding paragraphs of the Complaint as if fully alleged herein.

233. At all relevant times, Plaintiff and all similarly situated **Job Title Class** members who submit Consents to Become Party Plaintiff are or were employed by Defendants as Private Claim Bankers responsible for assisting clients, opening new client accounts, and account

maintenance, among other duties, and have been entitled to the rights, protections and benefits provided under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq*.

234. The FLSA requires, among other things, that employers pay employees the minimum wage for all time worked plus overtime. 29 U.S.C. §§ 206, 207 and 215.

235. At all relevant times, Defendants failed to compensate Plaintiff and **Job Title Class** members for all hours worked. Defendant failed to compensate Plaintiff for pre-shift, post-shift, and unpaid work during meal and rest breaks. The job functions Plaintiff completed during this uncompensated time was necessarily and directly related to the principal activities of the employee's duties, and therefore constitutes compensable time under the FLSA and is subject to the FLSA overtime requirements. 29 C.F.R. § 785.38.

236. At all relevant times, Defendants have violated the FLSA by failing to pay Plaintiff for all hours worked at the applicable regular rate, including failing to record and compensate off-the-clock time

237. At all relevant times, Defendants have violated the FLSA by failing to pay **Job Title Class** members at one and one-half times the regular rate of pay when an employee's total hours worked exceed forty hours in a workweek.

238. Defendants have also violated the FLSA by failing to keep required accurate records of all hours worked by **Job Title Class** members. 29 U.S.C. § 211(c).

239. Plaintiff and similarly situated employees are victims of a uniform and entity-wide compensation policy. This uniform policy has been applied to all employees employed by Defendants in violation of the FLSA.

240. Plaintiff and all similarly situated individuals are entitled to damages equal to the mandated pay and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or

showed reckless disregard of whether their conduct was prohibited by the FLSA.

241. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. Plaintiff and other similarly situated individuals are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation, including overtime wages and/or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

242. As a result of violations of the FLSA minimum wage and overtime pay provisions, Defendants have unlawfully withheld compensation from Plaintiff and all similarly situated individuals. Defendants are liable for unpaid compensation, together with an amount equal as liquidated damages, attorneys' fees and costs. 29 U.S.C. § 216(b).

## SIXTEENTH CAUSE OF ACTION

## RETALIATION IN VIOLATION OF LABOR CODE § 1102.5

**(Against all Defendants)**

243. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

244. Labor Code § 1102.5 prohibits an employer from retaliating against an employee for disclosing information, or for refusing to participate in activity, where the employee has reasonable cause to believe the information discloses a violation of, or noncompliance with, a state or federal statute, rule, or regulation.

245. Plaintiff engaged in protected activity under Labor Code § 1102.5 when, in February 2025, he reported to Human Resources via a company app that his meal and rest periods were constantly interrupted and asked whether this entitled him to additional compensation. In February 2025, Plaintiff raised concerns to HR via a company app that his meal and rest periods were constantly interrupted and inquired if this entitled him to additional compensation; HR provided no

response

246. Plaintiff further engaged in protected activity by internally reporting potential incentive program errors to his Branch Manager, consistent with upper management's directive to report such errors. Shortly before his termination, The Company integrated a new incentive program for new client sign-ups, and upper management knew the system had errors and instructed employees to report these errors In late February or early March 2025, Plaintiff verbally notified Branch Manager Thompson that an incentive bonus was improperly credited to him, and she instructed him to note the error on the client profile

247. Defendants subjected Plaintiff to adverse employment action by terminating his employment on March 7, 2025. On or around March 7, 2025, Plaintiff was called into Thompson's office and terminated on the stated grounds that he manipulated the customer incentive program

248. There is a causal connection between Plaintiff's protected reports and the adverse action, including the close temporal proximity between Plaintiff's disclosures in February/early March 2025 and his termination on March 7, 2025, as well as the pretextual nature of the cited reason given his report of incentive errors and instruction to document them. Plaintiff reported incentive program miscrediting in late February or early March 2025 and was terminated on March 7, 2025, shortly thereafter Upper management had acknowledged errors in the incentive system and instructed employees to report such errors

249. Following his termination, Plaintiff complained to HR that he believed he was terminated in retaliation for his wage-and-hour reports. After his termination, Plaintiff notified HR that he believed the termination was in retaliation for raising concerns regarding missed and interrupted meal and rest periods

250. As a direct and proximate result of Defendants' retaliation in violation of Labor Code § 1102.5, Plaintiff has suffered damages, including lost wages, lost benefits, and other

economic and non-economic harm, in an amount to be determined at trial.

251. Plaintiff seeks all available remedies for violations of Labor Code § 1102.5, including but not limited to damages, civil penalties as available, injunctive relief, attorney's fees and costs, and any other relief permitted by law.

**SEVENTEENTH CAUSE OF ACTION**

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**(Against all Defendants)**

252. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

253. Plaintiff's termination was wrongful in that it violated the fundamental public policies of California that prohibit discrimination, harassment, and retaliation on the basis of: sex, race; and for objecting and complaining about an employer's violations of wage and hour laws, as discussed above.

254. Defendants discharged Plaintiff in violation of the aforementioned public policies, under:

a. California Government Code § 12940, *et seq.*;

b. California Government Code § 12940(h);

c. California Government Code § 12940(k);

d. California Labor Code § 98.6;

e. California Labor Code § 1102.5;

255. As a direct and proximate cause of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages in an amount within the jurisdiction of this court, the exact amount to be proven at trial.

256. As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and

continues to suffer actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, emotional distress, humiliation, mental anguish, anger, and embarrassment, all in an amount subject to proof at the time of trial.

257. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff, and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## EIGHTEENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against all Defendants)**

258. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

259. Defendants discriminatory, harassing, and retaliatory actions against Plaintiffs constituted severe and outrageous misconduct and caused Plaintiffs extreme emotional distress.

260. Defendants had the intention of causing and/or recklessly disregarded the probability of causing emotional distress to Plaintiffs and did, in fact, cause emotional distress to Plaintiffs. Defendants' misconduct caused Plaintiff severe emotional distress, including, but not limited to, depression and anxiety.

261. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

262. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has

suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damages in a sum according to proof.

263. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

**NINETEENTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Against all Defendants)**

264. Plaintiff realleges and incorporates all preceding paragraphs, as though set forth in full herein.

265. Defendants owed Plaintiff a duty because of their preexisting relationship as employer-employee and employer-manager/superior to refrain from discrimination against or harassing Plaintiff because of his sex and race in violation of FEHA.

266. Defendants owed a further duty to Plaintiff to take reasonable steps to take reasonable action to avoid these wrongful acts and to reasonably deal with them upon learning of their existence.

267. Defendants' acts and/or omissions constituting, authorizing, condoning, and ratifying discrimination and/or harassment as hereinabove alleged toward Plaintiff, and Defendants' failure to take reasonable steps to avoid these wrongful acts or reasonably deal with them upon learning of their existence, constituted breaches of their respective duties.

268. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer severe emotional distress. Plaintiff has sustained and continues

to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

269. As a proximate result of Defendants extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damages in a sum according to proof.

270. The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## TWENTIETH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Against all Defendants)**

271. Plaintiff re-alleges and incorporates all preceding paragraphs as though fully set forth herein.

272. Plaintiff had an existing economic relationship with prospective employers in the financial services industry that, to Defendants' knowledge, was reasonably probable to confer future economic benefits to Plaintiff, given his professional licensure and experience. Plaintiff holds professional licenses including Series 6, Series 63, Securities Industry Essentials, and Life and Health Insurance.

273. Defendants knew of Plaintiff's prospective economic relationships and the substantial probability of future economic benefit because his licensure and role depended on maintaining professional standing and employability in regulated financial services.

274. Defendants intentionally engaged in wrongful conduct, independent of the privilege

of competition, designed to disrupt Plaintiff's prospective economic relationships, by publishing adverse information about Plaintiff on an industry regulatory reporting system accessible to potential employers. Following his termination, The Company reported Plaintiff on BrokerCheck, a FINRA tool accessible to potential employers of Plaintiff.

275. Defendants' conduct was wrongful because it was retaliatory, pretextual, and not motivated by legitimate business purposes, and was undertaken with the intent to, or with knowledge that it would, interfere with Plaintiff's ability to secure comparable employment.

276. The intentional interference caused actual disruption of Plaintiff's prospective economic relationships and employment opportunities. As a result of The Company's BrokerCheck report, Plaintiff's employment prospects have been severely limited and he was forced to find another position that does not require his professional licenses.

277. As a direct and proximate result of Defendants' intentional interference, Plaintiff has suffered damages, including lost past and future earnings, loss of employment opportunities, reputational harm, and other consequential losses, in an amount to be determined at trial.

278. Plaintiff seeks all available relief for intentional interference with prospective economic advantage, including damages, punitive damages as permitted by law, costs of suit, and such other relief as the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION

## DEFAMATION

**(Against all Defendants)**

279. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

280. Following his termination, The Company reported Plaintiff on BrokerCheck, a tool of the Financial Industry Regulatory Authority ("FINRA") accessible to potential employers of

Plaintiff.

281. Plaintiff was terminated on or around March 7, 2025, on the stated grounds that he "manipulated the customers incentive program."

282. Shortly before Plaintiff's termination, The Company integrated a new incentive program that upper management knew was fraught with errors that could automatically activate incentive bonuses, and upper management instructed employees to report such errors as they occurred.

283. In late February or early March 2025, Plaintiff notified Branch Manager Thompson that an incentive bonus was improperly credited to him, and, per Thompson's instruction, he documented the error on the client profile.

284. Plaintiff is informed and believes, and thereon alleges, that Defendants published false and defamatory statements of and concerning Plaintiff, including statements accusing Plaintiff of unethical or improper conduct in connection with incentive compensation, to third parties through entries and disclosures made on BrokerCheck and/or communications to prospective employers and industry participants, with the intent that such statements be understood as assertions of fact.

285. The above-described statements were false when made and not privileged, and Defendants knew the statements were false, or acted with reckless disregard for their truth or falsity, or at a minimum acted negligently in failing to ascertain the truth prior to publication, including by ignoring Plaintiff's prior report of incentive-system errors and his documentation of the erroneous credit.

286. Publication occurred because Defendants disseminated the defamatory matter to third parties beyond Plaintiff, including via BrokerCheck and to potential employers and industry participants, and those third parties understood the statements to be about Plaintiff and his

professional integrity.

287. The defamatory statements impute dishonesty and professional misconduct to Plaintiff and are defamatory per se because they tend to injure him in his profession and trade.

288. As a direct and proximate result of Defendants' defamatory publications, Plaintiff's employment prospects have been severely limited and he was forced to find another position that does not require his professional licenses.

289. Defendants acted with malice, oppression, or fraud in making and publishing the defamatory statements, in retaliation for Plaintiff's protected complaints and in interference with his prospective economic advantage, thereby warranting the imposition of punitive and exemplary damages in an amount to be determined at trial.

290. Plaintiff has suffered general and special damages, including without limitation loss of employment opportunities, harm to reputation, shame, humiliation, and emotional distress, in amounts to be proven at trial.

## TWENTY-SECOND CAUSE OF ACTION

**UNFAIR COMPETITION**

**(Bus. & Prof. Code §§ 17200 *et seq.*)**

**(Plaintiff and UCL Class)**

291. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

292. Business and Professions Code § 17200 defines "unfair competition" to include any unlawful business practice.

293. Business and Professions Code §§ 17203–17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure § 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

294. California law requires employers to pay hourly, non-exempt employees for all hours

they are permitted or suffered to work, including hours that the employer knows or reasonably should know that employees have worked.

295. Plaintiff, on behalf of himself and the **UCL Class** members, re-alleges and incorporates the FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, and EIGHTH, NINTH, TENTH, ELEVENTH, TWELFTH, THIRTEENTH, FOURTEENTH, FIFTEENTH, SIXTEENTH, SEVENTHEENTH, EIGHTEENTH and NINETEENTH causes of action herein.

296. Plaintiff lost money and/or property as a result of the aforementioned unfair competition.

297. Defendants have or may have acquired money by means of unfair competition.

298. Plaintiff is informed and believes and thereupon alleges that, by committing the Labor Code violations described in this Complaint, Defendants violated Labor Code §§ 215, 216, 225, 226.6, 354, 408, 1175, 1199 and 2802. Defendants thus committed misdemeanors by violating the Labor Code as alleged herein.

299. Defendants have committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by failing to pay non-exempt employees for all hours worked, and by failing to reimburse them for all expenses.

300. At all relevant times, Plaintiff and **UCL Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

301. Defendants' unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et sequitur*. Business and Professions Code §§ 17200 *et sequitur* protect against unfair competition

and allow a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on behalf of himself and on behalf of similarly situated persons in a class-action proceeding.

302. As a result of Defendants' violations of the Labor Code during the applicable limitations period, Plaintiff has suffered an injury-in-fact and has lost money or property in the form of earned wages. Specifically, Plaintiff has lost money or property as a result of Defendants' conduct.

303. Plaintiff is informed and believes that other similarly situated persons have been subject to the same unlawful policies or practices of Defendants.

304. Due to the unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

305. California's Unfair Competition Law ("UCL") permits civil recovery and injunctive relief for "any unlawful, unfair or fraudulent business act or practice," including a practice or act that violates, or is considered unlawful under, any other state or federal law.

306. Accordingly, pursuant to Business & Professions Code §§ 17200 and 17203, Plaintiff requests the issuance of temporary, preliminary, and permanent injunctive relief enjoining Defendants, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders, and upon a final hearing, an order permanently enjoining Defendants, and each of them, and their respective agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders.

307. Pursuant to Business and Professions Code § 17203, Plaintiff, on behalf of himself and **UCL Class** members, seeks declaratory relief and restitution of all monies rightfully belonging

to them that Defendants did not pay them or otherwise retained by means of its unlawful and unfair business practices.

308. Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiff and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

**<u>TWENTY-THIRD CAUSE OF ACTION</u>**

**CIVIL PENALTIES**

**(Lab. Code §§ 2698 *et seq*.)**

**(Against all Defendants)**

309. Plaintiff incorporates the preceding paragraphs as if fully alleged herein.

310. During the applicable limitations period, Defendants have violated Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7, 227.3, 510, 512, 1194, 1197, 1197.1, 1198, and 2802.

311. Labor Code §§ 2699(a) and (g) authorize an aggrieved employee, on behalf of himself and other current and former employees, to bring a representative civil action to recover civil penalties pursuant to the procedures set forth in Labor Code § 2699.3 that may, but need not, be brought or maintained as a class action pursuant to Code of Civil Procedure section 382.

312. Plaintiff, a former employee against whom Defendants committed one or more of the alleged Labor Code violations during the applicable limitations period, is an aggrieved employee within the meaning of Labor Code § 2699(c).

313. Plaintiff has complied with the procedures for bringing suit specified in Labor Code § 2699.3. Notice was provided to the California Labor & Workforce Development Agency ("LWDA") and 65 days have elapsed without the LWDA providing Plaintiff with any notice of an intent to investigate.

314. Pursuant to Labor Code sections 2699(a) and (f), Plaintiff seeks the following civil penalties for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 223, 226(a), 226.7,

227.3, 510, 512, 1194, 1197, 1198 and 2802:

i. For violations of Labor Code §§ 201, 202, 203, 212, 226.7, 227.3, 1194, 1198 and 2802, one hundred dollars ($100) for each employee per pay period for each initial violation and two hundred dollars ($200) for each employee per pay period for each subsequent violation (penalties set by Labor Code § 2699(f)(2));

ii. For violations of Labor Code § 203, a penalty in an amount not exceeding thirty (30) days' pay as waiting time (penalties set by Labor Code § 256);

iii. For violations of Labor Code § 204, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus 25% of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation, regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 210);

iv. For violations of Labor Code § 223, one hundred dollars ($100) for each employee for each initial violation that was neither willful nor intentional, two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each initial violation that was either willful or intentional, and two hundred dollars ($200) for each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee, for each subsequent violation,

regardless of whether the subsequent violation was either willful or intentional (penalties set by Labor Code § 225.5);

v. For violations of Labor Code § 226(a), if this action is deemed to be an initial citation, two hundred and fifty dollars ($250) for each employee for each violation. Alternatively, if an initial citation or its equivalent occurred before the filing of this action, one thousand dollars ($1,000) for each employee for each violation (penalties set by Labor Code § 226.3);

vi. For violation of Labor Code §§ 510 and 512, fifty dollars ($50) for each employee for each initial pay period for which the employee was underpaid, and one hundred dollars ($100) for each employee for each subsequent pay period for which the employee was underpaid (penalties set by Labor Code § 558);

vii. For violations of Labor Code § 1197, one hundred dollars ($100) for each aggrieved employee for each initial violation of Labor Code § 1197 that was intentional and two hundred and fifty dollars ($250) for each aggrieved employee per pay period for each subsequent violation of Labor Code § 1197, regardless of whether the initial violation was intentional (penalties set by Labor Code § 1197.1);

viii. Pursuant to Labor Code § 2699(g)(1), Plaintiff seeks an award of reasonable attorneys' fees and costs in connection with Plaintiff's claims for civil penalties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for relief and judgment against Defendants as follows:

(1) For all compensatory damages in the form of consequential, and incidental damages, including but not limited to back pay, front pay, loss of earnings and employee benefits and damages for emotional distress, according to proof;

(2) For general and special damages, and interest thereon, according to proof;

(3) For restitution for unfair competition pursuant to Business & Professions Code § 17200 *et seq.*, including disgorgement of profits resulting from Defendants' unlawful business acts and practices, according to proof;

(4) For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties adumbrated in this Complaint;

(5) An order that the action be certified as a class action;

(6) An order that Plaintiff be appointed class representative;

(7) An order that counsel for Plaintiff be appointed class counsel;

(8) Unpaid wages;

(9) Actual damages;

(10) Liquidated damages;

(11) Restitution;

(12) Declaratory relief;

(13) Pre-judgment interest;

(14) Civil penalties;

(15) Costs of suit;

(16) Reasonable attorneys' fees; and

(17) Such other relief as the Court deems just and proper.

Dated: September 15, 2026

SETAREH LAW GROUP

<u>/s/ *Thomas Segal*</u>

SHAUN SETAREH
THOMAS SEGAL
FARRAH GRANT
Attorneys for Plaintiff
ROGELIO VARGAS-LOPEZ JR.

`